UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAPHAEL HAMMOND | No. 24 CR 242<br><br>Judge Lindsay C. Jenkins |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant has an extensive history of illegal and dangerous gun use. From being identified by a gunshot victim as the shooter in 2006 (PSR ¶ 87), to being a gunshot victim himself, by his count, at least four times, most recently in 2018 (PSR ¶ 133), to convictions for illegal gun possession in 2008 (PSR ¶ 41) and 2018 (PSR ¶ 49). Yet, despite shooting them, being shot himself, and spending time in both state and federal prison for possessing them, on May 5, 2024, defendant, once again, possessed a gun, and then shot it at someone, endangering the lives of everyone in the vicinity.

Defendant's repeated gun possession, self-admitted gang affiliation, disregard for court-imposed sanctions and conditions, and in this case specifically, abject callousness in running down a busy street on a weekend night shooting at a fleeing vehicle, combine to create a significant threat to public safety and demonstrate a need for a sentence to protect the public, promote respect for the law, and specifically deter defendant from ever possessing a firearm again. Accordingly, the government respectfully requests that the Court impose an above-Guidelines sentence of 100 months' imprisonment.

I.   **FACTUAL BACKGROUND**

On May 5, 2024, at around 12:20 a.m., defendant and Individual B entered Business A, an arcade and bowling alley near the 1000 block of West Addison Street in Chicago. While inside Business A, defendant encountered a black male wearing a red floral hooded sweatshirt and light colored jeans (Individual A).

At around 1:13 a.m., defendant and Individual B, left Business A and stood on the sidewalk in front of it. At that time, defendant was concealing a Ruger pistol near his waistband. While defendant stood in front of Business A with Individual B, Individual A got out from the front passenger seat of a dark colored SUV, which was idling on the street adjacent to where defendant stood on the sidewalk. Individual A walked up to defendant, brandished a gun, and fired it in defendant's direction.

In response, defendant turned his back on Individual A and ran back into Business A. Individual A hurried back into the front passenger seat of the dark colored SUV as it began driving away, eastbound on Addison Street.

Inside Business A, defendant retrieved the Ruger pistol from his waistband, brandished it in his left hand, and then ran out of Business A pointing and shooting the Ruger toward the fleeing SUV. Defendant shot multiple times toward the SUV as is drove away on Addison. Defendant fired at least one shot while still inside Business A, and five more shots as he ran down the sidewalk.

After the SUV drove out of sight, defendant tucked the Ruger back in his waistband and turned around and walked back toward Business A. He continued

walking passed Business A, westbound on Addison Street, accompanied by Individual B.

At the same time, a black male wearing a black cap, red hooded sweatshirt, dark pants, white shoes, and carrying a bookbag ("Individual C"), pulled out a firearm from the bookbag, brandished it, and fired several times in the direction of defendant and Individual B.[1] Individual B was struck by a bullet in her right leg, which caused her to fall to the sidewalk where she began to bleed.[2] Defendant continued walking westbound on Addison until he came to a planter box on the sidewalk outside Business B. Defendant hid the Ruger in the planter box, returned to Individual B, and waved down arriving police officers to Individual B's location. When officers arrived seconds later, defendant told them that he had run from a shooter, who defendant said was in a blue truck. Defendant did not tell officers of his possession and use of the Ruger. Defendant then quickly walked away from the scene and into a parking garage associated with Business A as more officers and paramedics arrived. Defendant drove away from the scene in a dark Audi sedan.

---

[1] Prior to the shooting incident involved Individual A, Individual C had been standing with a crowd of other people in front of Business A, and appeared to be associated with the dark colored SUV that was parked in front of Business A, and from which Individual A got out of immediately before shooting toward defendant.

[2] Although the plea agreement indicates defendant's firearm discharged at the time Individual B was struck by a bullet (Dkt. 43 at 3), based on subsequent review of multiple camera angles, all of which were previously produced, at the time Individual B was struck by a bullet, Individual C was firing his gun in defendant and Individual B's direction. Therefore, it is likely that Individual B was struck by Individual C's gunfire.

Officers recovered defendant's firearm from the planter box next to Business B at approximately 3:10 a.m. At approximately 4:45 a.m., a dark Audi sedan, which appeared to be the same make model and color as the sedan defendant arrived to and left the area in earlier, drove up and stopped on Addison directly in front of the planter box. A black male in a long black hooded robe got out of the passenger seat of the sedan and searched through the planter box before returning to the sedan, which left the area.

## II. PRELIMINARY ADVISORY SENTENCING GUIDELINES CALCULATION

The government agrees with the offense level and criminal history category calculations set forth in the Sentencing Recommendation ("Rec.") submitted by the United States Probation Office ("Probation"). Defendant's total offense level is 21 and his criminal history category is IV based on 9 criminal history points. Rec. at 1. Therefore, based on an offense level of 21, and a criminal history category of IV, defendant's Guidelines range is 57 to 71 months' imprisonment. As explained below, the government disagrees with the PSR recommendation of 71 months.

## III. SENTENCING RECOMMENDATION

### A. Nature and Circumstances of the Offense

Defendant did not simply possess a firearm while being a convicted felon. He engaged in a shoot-out across the street from Wrigley Field on a warm weekend night in May, placing dozens of innocent people at risk of being shot.

Though bystanders were not shot that night, an associate of defendant, Individual B, was. But rather than stay with Individual B as she bled on the sidewalk, defendant chose to conceal his gun and quickly leave the area without notifying police of his involvement. Defendant then attempted to retrieve the gun later that evening. Each of these actions demonstrate not only a consciousness of guilt, but experience with evading law enforcement. In further aggravation, at the time of this offense, defendant was on federal supervised release for a separate felon-in-possession of a firearm conviction under case number 17 CR 434 (PSR ¶ 49).

### B. Defendant's History and Characteristics

The most aggravating part of defendant's history is that his prior convictions and sentences not only failed to deter defendant from possessing firearms, but seemed to have not mattered to defendant at all, since, in this instance, he escalated his use of guns by firing one down a busy, populated street. Despite having suffered gunshot wounds in August 2017, December 2017, and January 2018 (PSR ¶ 135), having been convicted of felony gun possession twice, most recently in 2018 when he was sentenced to 40 months' imprisonment (PSR ¶ 49), defendant continues to carry firearms.

While defendant suffered difficulties during his early childhood upbringing (PSR ¶ 119), he then moved to a supportive and loving environment at a relative's home during his early teenage years (PSR ¶¶ 120-121). Defendant stated that he left that environment (PSR ¶ 121) and became involved in a street gang (PSR ¶ 130).

5

Since joining that gang at age 14, he had continued run ins with law enforcement in the form of arrests for battery, domestic violence, drug possession, and murder from the time defendant turned 18 years old until the instant May 2024 offense, which defendant committed at age 37.

### C. 3553(a) Factors

Based on the nature and circumstances of the offense and defendant's history and characteristics, defendant's sentence must reflect a need to protect the public, uphold respect for the rule of law, and specifically deter defendant. Defendant understands better than almost anyone, the consequences of being around guns—he has previously been caught, charged, and convicted for gun possession and other felony offenses, has been arrested as the perpetrator gun violence, and has been victim of gun violence himself. Still, prior prison terms imposed against defendant have not deterred him from carrying and using firearms, even where it meant, as it did here, endangering the lives of innocent bystanders in the vicinity of his gunfire. Moreover, that defendant possessed the firearm in the instant case, while being on federal supervised release for a separate illegal firearms possession case where he led police on a highspeed car chase that resulted in him crashing the car and throwing the gun into a residential backyard (PSR ¶ 49), underscores defendant's heedlessness for the rule of law.

An above-Guidelines sentence of 100 months is needed to protect the public from defendant, promote respect for the law based on the extreme wantonness of

6

defendant's actions, and specifically deter defendant from ever being around firearms again.

### IV. SUPERVISED RELEASE CONDITIONS

The government requests that the Court impose a three-year term of supervised release, which is the statutory maximum, also recommended by Probation. (Rec. at 1)

#### A. Mandatory Conditions

The government respectfully requests that defendant be required to comply with the following mandatory conditions set forth in 18 U.S.C. § 3583(d) and Guideline § 5D1.3(a):

(1) Defendant shall not commit another federal, state, or local offense.

(2) Defendant shall not unlawfully possess a controlled substance.

(5) Defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

(6) Defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.

The government recommends these conditions to provide adequate deterrence to criminal conduct, and protect the public from further crimes of defendant. In addition, these conditions enhance the ability of the Probation Officer to target interventions with the goal of reducing defendant's risk of re-offending.

7

B. **Discretionary Conditions**

The government requests that defendant be required to comply with the following discretionary conditions permitted by 18 U.S.C. § 3583(d) and Guideline § 5D1.3(c) and (d), in order to facilitate supervision by the Probation Officer, support defendant's rehabilitation and reintegration into the community, and promote deterrence and protect the public, and because they are otherwise appropriate in this case:

(1) Defendant shall provide financial support to any dependents if financially able to do so.

(4) Defendant shall seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment.

(6) Defendant shall refrain from knowingly meeting or communicating with any person whom defendant knows to be engaged, or planning to be engaged, in criminal activity.

(7) Defendant shall refrain from excessive use of alcohol (defined as having a blood alcohol concentration greater than 0.08%), or any use of a narcotic drug or other controlled substance, without a prescription by a licensed medical practitioner.

(8) Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

(9) Defendant shall participate in a substance abuse treatment program at the direction of a probation officer.

(14) Defendant shall remain within the jurisdiction where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

- (15) Defendant shall report to the probation office as directed by the court or a probation officer.

- (16) Defendant shall permit the probation officer to visit the defendant at any reasonable time or at home, work, or other reasonable location and to confiscate any contraband in plain view of the officer.

- (17) Defendant shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. Defendant shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

- (18) Defendant shall notify a probation officer promptly, within 72 hours, if arrested, charged with a crime, or questioned by a law enforcement officer.

- (22) Defendant shall satisfy other such special conditions as ordered.

- (24) Defendant shall submit his person, property, house, residence, vehicle, papers, or office to a search conducted by a United States Probation Officer(s).

**C.    Special Conditions**

In light of the continuing need to protect the public and to ensure that the probation officer can satisfy his or her duty to remain informed about the defendant, as well as to support defendant's rehabilitation and reintegration into the community, the government concurs with the PSR's recommendations that the Court impose the following special conditions of supervision pursuant to 18 U.S.C. § 3563(b)(22) and § 3583(d):

- (11) Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

(13) If the probation officer determines defendant poses a risk to another person (including an organization or members of the community), the probation officer may require defendant to tell the person about the risk, and defendant must comply with that instruction.

(14) Defendant shall observe one Reentry Court session, as instructed by your probation officer.

## V.  CONCLUSION

For the reasons stated, the government respectfully requests that this Court impose an above-Guidelines range sentence of 100 months.

                                Respectfully Submitted,

                                MORRIS PASQUAL
                                ACTING UNITED STATES ATTORNEY

By:    /s/ *Saqib Mohammad Hussain*
        SAQIB MOHAMMAD HUSSAIN
        Assistant United States Attorney
        United States Attorney's Office
        219 South Dearborn, 5th Floor
        Chicago, Illinois 60604
        (312) 353-1414
        saqib.hussain@usdoj.gov

Dated: June 20, 2025